**James Robert INGRAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–97–0127–CR.**

Court of Appeals of Texas, Amarillo.

June 15, 1998.

Jeffrey B. Keck, Dallas, for appellant.

John Vance, Criminal Dist. Atty., Michael J. Sandlin, Asst. Dist. Atty., Dallas, for appellee.

Before BOYD, C.J., REAVIS, J., and REYNOLDS,* Senior Justice.

REYNOLDS, Senior Justice (Retired).

A jury found appellant James Robert Ingram guilty of the offense of unlawful possession of a firearm by a felon away from the premises where he lives, and assessed his punishment, enhanced by a prior felony conviction, at imprisonment for 20 years and a $10,000 fine.[1] Appellant charges the trial court with error in refusing his request for a jury instruction on (1) mistake of fact, and (2) the justification of necessity; in (3) overruling his objection to the prosecutor's argument; and in (4) refusing his *Batson*[2] motion regarding the State's peremptory challenges to two jurors. We will affirm.

The evidence revealed that at approximately 10:45 p.m. on 1 April 1995, as Dallas police officer William Smith, accompanied by officer Jerry Cockrell, was driving a patrol car in the center lane of C.F. Hawn Freeway, they observed appellant walking in that lane against the flow of traffic. Officer Smith stopped the patrol car and, at that moment, appellant fell down. Officer Cockrell assisted appellant, who was clutching his side, off the freeway while officer Smith drove the patrol car to the roadway's edge.

Officer Cockrell testified that appellant was wearing a jumpsuit and a light windbreaker which, he believed, did not match. He also believed the jacket was green and made of lightweight material like nylon. Officer Smith thought appellant was wearing matched jogging pants and jacket which, he believed, was dark blue. The arrest report showed only that the jacket was a light-weight one.

Appellant appeared to be out of breath and he was sweating profusely. He told the officers he had been running up and down the freeway, indicating someone had been chasing him, but the officers did not see anyone who might have done so. Trying to ascertain if appellant was injured, the officers discovered that he was intoxicated.

When officer Smith approached appellant and officer Cockrell, he shined his flashlight on appellant. Noticing appellant's hand was on the butt of a pistol in the waistband of his trousers, he alerted officer Cockrell. Officer Cockrell held appellant's arms while officer Smith retrieved the pistol, which contained five live rounds and one spent round. Appellant was arrested.

Searching appellant, officer Cockrell found $1,005 cash in his right front pants pocket, and in one of the jacket's pockets, he discovered bags of substances, packaged for resale, which were later proved to be heroin and cocaine. By documentary evidence, the State made proof that appellant was convicted of a felony offense before the commission of the present offense.

Testifying in his own behalf, appellant, describing his attire as a black, two-piece jogging suit, the jacket of which was trimmed in red, stated that earlier in the evening, he had been gambling at a house about three blocks from the freeway. When he started gambling, he took off his jacket. Drinking while gambling, he became intoxicated and won some money.

Also present at the house was Denise Johnson and a reputed drug dealer named "Blood." Johnson indicated to appellant that she thought someone was going to try to rob him.[3] Appellant left the house in a "rush" with Johnson.

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

1. Although the cause was tried before Honorable Bill Stephens, sitting for Honorable Mark Nancarrow, Judge of the district court, the judgment was signed by Honorable Tom Price.

2. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (using peremptory strikes to exclude venirepersons of a certain race from jury service violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution).

3. The State's hearsay objection to this statement was sustained, but there was no request that the testimony be withdrawn from the jury's consideration.

After walking a half of a block, appellant realized that he had left his jacket, and he sent *Johnson* back to get it. She returned, handed appellant a jacket which, he assumed, was his, and left. The jacket seemed heavy, but appellant assumed it was because of the bottle of Crown Royal he had in the pocket of his jacket.

When appellant got to the middle area of the freeway, he put the jacket on, and a pistol fell out of it, at which time he realized he had the wrong jacket. He picked up the pistol and at that time, although he was thinking someone was chasing behind him, he was going to throw it away on the other side of the freeway, but he encountered the officers. Being fearful the officers might shoot him if they saw the gun, he tried to keep them from seeing it by putting it under the jacket.

▮ Considered in procedural order, appellant's fourth-point contention that the trial court erred in refusing his *Batson* motion will be first addressed. It was evinced that appellant was an Afro–American and, in exercising six of its ten peremptory challenges, the State struck two Afro–Americans, Thornton and Shepherd, leaving no Afro–Americans on the jury since several other panelists of that race were excused for cause.

▮ When appellant requested a *Batson* hearing, the court expressed reservations whether appellant had shown the strikes were racially motivated, but the prosecutor offered an explanation, thereby mooting the court's reservations. Wheatfall v. State, 882 S.W.2d 829, 835 (Tex.Cr.App.1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995). In offering the explanation, the State assumed the burden of showing its challenges were race-neutral, and if it met the burden, appellant would be allowed to rebut the explanation. *Id.* Because the court overruled the motion, it effectively found that the State's challenges were not racially motivated, and the findings, which are accorded great deference, will not be reversed unless clearly erroneous. *Id.*

The prosecutor explained that Thornton was twelve minutes late getting back for the second half of voir dire, which showed her attitude, and "[s]he kind of sauntered in here twelve minutes late, like that's no big deal. I didn't like that attitude so I struck her for that reason." Although appellant pointed out that the prosecutor did not seek to ascertain why Thornton was late and, in a posthearing motion that lateness had been considered irrelevant, the prosecutor repeated, as the reason for striking Thornton, that he did not like her attitude.

▮ Dislike of a panelist's attitude, albeit facially race neutral in the same manner as demeanor and "body english" explanations are race neutral, Anderson v. State, 758 S.W.2d 676, 680 (Tex.App.—Fort Worth 1988, pet'n ref'd), is an intangible excuse which is properly evaluated by the trial judge, who was present to witness the conduct of Thornton and to assess the credibility of the prosecutor and his explanation. Kemp v. State, 846 S.W.2d 289, 304 (Tex.Cr.App. 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Not being a characteristic that is peculiar to any race, attitude is race neutral, Purkett v. Elem, 514 U.S. 765, 768–69, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), and because we review the evidence in the light most favorable to the trial court's ruling, we cannot say the court's acceptance of the prosecutor's explanation as a race neutral reason for striking Thornton was clearly erroneous.

▮ Expressing an initial liking for Shepherd for his professional appearance, the prosecutor struck him when it was revealed "his son had a UCW and is currently on probation in Dallas County for a UCW exactly like this offense, except he has a prior felony." The prosecutor also struck a white panelist "for the exact same reason . . . actually himself with a UCW," saying "we were consistent in striking people that had UCWs or relatives with UCWs due to the nature of this offense." Appellant did not attempt to rebut the explanation, apparently realizing that kinship with a person who has had trouble with the law can constitute a legitimate racially neutral reason for striking a juror. Sims v. State, 768 S.W.2d 863, 865 (Tex. App.—Texarkana 1989), *pet'n dism'd,* 792 S.W.2d 81 (Tex.Cr.App.1990); Rijo v. State, 721 S.W.2d 562, 564 (Tex.App.—Amarillo

1986, no pet'n). Appellant's fourth point of error is overruled.

Appellant's conviction resulted upon proof satisfactory to the jury that he violated the statute creating an offense when (1) a person who had been convicted of a felony (2) knowingly and intentionally possesses a firearm away from the premises where he lives. Tex. Penal Code Ann. § 46.04(a)(2) (Vernon 1994). The jury was guided by the court's instruction that "[t]he term 'possess' means the care, custody, control, or management of property." *See* Tex. Penal Code Ann. § 1.07(28) (Vernon 1994).

When the court's charge to the jury was submitted to counsel, appellant requested the inclusion of instructions on the defenses of mistake of fact and necessity. The overruling of the requests prompted appellant's first and second points of error.

■ Mistake of fact is a defense to prosecution if appellant "through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." Tex. Penal Code Ann. § 8.02(a) Vernon 1994). He was entitled to an instruction on the defensive issue if it was raised by the evidence, irrespective of whether the evidence was weak or strong, unimpeached or contradicted, and without regard to the trial court's appraisal of its credibility. Miller v. State, 815 S.W.2d 582, 585 (Tex.Cr.App. 1991). To raise the defensive issue of mistake of fact, there must be evidence which negates the culpable mental state, *i.e.*, knowingly or intentionally, required for the offense. Willis v. State, 790 S.W.2d 307, 314 (Tex.Cr.App.1990).

Appellant contends that the mistake of fact arose when he was given the wrong jacket by Johnson, and he assumed it was weighted by the bottle of liquor that was in his jacket instead of the pistol in the jacket. Had he been apprehended with the pistol still in the jacket, he would have been entitled to the mistake of fact instruction, for then the evidence would have created an issue of mistaken belief as to whether he knowingly or intentionally possessed the firearm. However, by appellant's own testimony, the pistol fell out of the jacket, he voluntarily retrieved it, and either had it in his hand, or had his hand on it, when it was discovered and seized by the officers.

The mistake of fact as to the ownership of the jacket does not negate the culpable mental state of the offense, for the evidence of appellant's later voluntary act of retrieving and keeping the fallen pistol was tantamount to his knowingly and intentionally possessing the firearm, the gravamen of the offense. Thus, the mistake of fact defense was not available to appellant, and the court did not error in refusing his requested instruction. Goodin v. State, 726 S.W.2d 956, 959 (Tex. App.—Fort Worth 1987), *aff'd*, 750 S.W.2d 789 (Tex.Cr.App.1988). Appellant's first point of error is overruled.

■ Appellant uses his second point of error to contend that he was entitled to, and the court erred in refusing, an instruction on necessity. This results, he argues, because he feared he was being followed by others who wished to harm him and, when the pistol dropped out of the pocket of the jacket given him by mistake, he "took *knowing* possession of the gun [while] he was still fleeing from the would be robbers he feared. [He] was concerned enough about the pursuers to risk crossing the freeway on foot."

Statutory provisions afford a defense to the offense of possession of a firearm by a felon if it is justified by necessity. Vasquez v. State, 830 S.W.2d 948, 950 (Tex.Cr.App. 1992). In this cause, appellant's conduct would be justified if (1) he admitted the offense charged, Leach v. State, 726 S.W.2d 598, 600 (Tex.App.—Houston [14th Dist.] 1987, no pet'n), (2) he reasonably believed the possession of the firearm was immediately necessary to avoid imminent harm, and (3) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the possession of a firearm by a felon. Tex. Penal Code Ann. § 9.22 (Vernon 1994).

Construing appellant's testimony favorably to him, it does not depict any circumstance which made it immediately necessary for him to possess a firearm. Although appellant conceded that he knowingly possessed the

firearm, and thought someone was chasing him, he never indicated that his possession of the pistol was to avoid imminent harm to him by the chaser; indeed, his testimony left no doubt that he was only going to possess the pistol until he could cross the freeway and throw it away. Absent evidence of an immediate necessity to possess the firearm to avoid imminent harm, appellant was not entitled to an instruction on the defense of necessity. Roy v. State, 552 S.W.2d 827, 831 (Tex.Cr.App.1977).[4] Appellant's second point of error is overruled.

During the examinations of officers Smith and Cockrell, it was established that neither seized the jacket appellant was wearing as evidence or had it photographed. The State documented that on 4 April 1995, appellant signed a property release form for the release of "all personal property" to Lee Watson, who signed the form as the person receiving the property.

In making the State's closing argument at the guilt-innocence stage of the trial, the prosecutor, directing the jury's attention to the "mystery" jacket and the jail records, was in the process of stating, "Well, folks, Mr. Ingram allowed the jacket to be checked out. His signature is on that property—," when he was interrupted by an objection "on the basis of misstating the facts." Defense counsel explained that the "document just says personal property. It doesn't say anything about a jacket. Obviously, if all of his clothes are released, he would have been walking out of jail naked, and that wouldn't have happened." The objection was overruled.

Assigning the court's ruling as error with his third point of error, appellant contends the objection was made because the prosecutor suggested the jacket was not available because he, appellant, had authorized its release, not because "we (the State) don't want to show it to you." However, the quoted portion of the State's argument was made after the objection was voiced and overruled, and there was no objection to the statement.

During jury argument, counsel may include reasonable deductions drawn from the evidence. Cooks v. State, 844 S.W.2d 697, 727 (Tex.Cr.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). Thus, counsel may draw from the facts in evidence all inferences, which may be based upon what the jury heard and observed in the courtroom during the presentation of evidence, that are reasonable, fair and legitimate, and counsel has wide latitude so long as the argument is supported by the evidence and offered in good faith. Vaughn v. State, 607 S.W.2d 914, 922–23 (Tex.Cr.App.1980).

Appellant contended he was given the wrong jacket, which contained the firearm upon which an element of the offense charged was based. The jury heard that the jacket appellant was wearing when he was apprehended neither was seized as evidence nor photographed, which inferred that he had it when he was incarcerated. Inasmuch as the jacket was not produced for the jury's view, the prosecutor, to remind the jury, as he did in his later remarks, that the State was not responsible for its absence, made the argument objected to, *i.e.,* "Well, folks, Mr. Ingram allowed the jacket to be checked out. His signature is on that property—."

Although appellant objected that the argument misstated the facts, we cannot say it, considered in context, was not a reasonable inference the prosecutor legitimately drew from the facts in evidence and offered in good faith within the latitude allowed him. Appellant's third point of error is overruled.

The judgment is affirmed.

---

**4.** *Roy* was overruled on another point by Johnson v. State, 650 S.W.2d 414, 416 (Tex.Cr.App. 1983).