# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00453-CV

**Centre Equities, Inc. and E. John Hosch, Appellants**

**v.**

**Wallace G. Tingley, Jr., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN000665, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

## O P I N I O N

This is an appeal from a summary judgment in a suit brought by Centre Equities, Inc. and E. John Hosch (collectively AHosch@), the seller-optionor under a stock purchase agreement, against Wallace G. Tingley, Jr., the Texas attorney representing an optionee with a right of first refusal under the agreement. Tingley allegedly made fraudulent or negligent misrepresentations, tortiously interfered with the sale of the stock to alternate purchasers, and conspired with the optionee to defeat that sale. Hosch, the seller-optionor, sued Tingley=s client, the optionee, in Alabama, and although he prevailed on liability, he was awarded only nominal damages. He subsequently filed this lawsuit in Texas against Tingley alleging, among other things, consequential damages incurred after rendition of judgment in the Alabama case. Tingley filed a summary judgment motion based on collateral estoppel alleging that the award and satisfaction of the

nominal damages in the Alabama judgment precludes relitigation of the damage issues in this case. On appeal, Hosch argues that collateral estoppel does not apply because: (1) there is no identity of issues between the two cases; (2) the nominal damage award of the Alabama judgment is not preclusive because subsequent damages are sought; and (3) the issue of damages was not fully and fairly litigated in the Alabama suit. We will reverse the judgment of the district court and remand for further proceedings.

## FACTUAL BACKGROUND

John Hosch is president and sole shareholder of Centre Equities, Inc., an Alabama corporation which is the subject of this lawsuit. It owns an office building known as the Burger-Phillips Centre located in Birmingham, Alabama. Hosch engaged the services of Don Legacy in connection with managing and leasing that building. They are alleged to have made an oral employment contract whereby Legacy was to act as a leasing agent and manage the property in return for fifteen percent of the stock of the corporation. A dispute arose concerning whether Legacy was to receive the fifteen percent ownership interest contemporaneously with the formation of the agreement or upon the Burger-Phillips building being fully leased and sold. The corporation entered into a separate oral agreement with Legacy whereby the corporation was to pay Legacy commissions for leasing its property.

The dispute over Legacy=s stock ownership led to litigation between Hosch and Legacy in Alabama. Hosch sued Legacy for breach of contract, rescission of the employment contract, and for Ausurping the Texas business opportunity@ in connection with the Legacy-Tingley business venture in Texas.[1]

---

[1] At some point, Legacy became partners with Tingley, a Texas attorney, in a separate business venture in Texas.

Hosch also sought a declaratory judgment that Legacy had no interest in Centre Equities. Legacy countersued for breach of contract and numerous other torts.

In the meantime, Hosch agreed to sell Centre Equities to James Rudnick and Donald Carrigan for $4.1 million. Hosch, Rudnick, and Carrigan executed a stock purchase agreement on May 14, 1997. Hosch alleges that because of the ongoing disagreement with Legacy, the parties gave Legacy a right of first refusal in the stock purchase agreement to purchase all of the stock of the corporation Aon the same terms and conditions@ as Rudnick and Carrigan agreed to pay.

The right of first refusal contained in paragraph 7.06 of the stock purchase agreement provides:

> 7.06 Right of First Refusal. The Purchasers agree that Mr. Legacy shall have the option to purchase the Shares hereunder on the same terms and conditions to this Agreement, if such is accepted by Mr. Legacy no later than June 11, 1997 in writing. Furthermore, the Seller shall immediately provide Mr. Legacy a copy of this Agreement with a notification of his right of first refusal immediately after the execution hereof.

One of the Aterms and conditions@ of the stock purchase agreement was an earnest money requirement:

> 7.12 Earnest Money. The Purchasers shall deposit the sum of Fifty Five Thousand and No/100 Dollars ($55,000.00) with their attorney, who shall acknowledge the receipt of such funds to the Seller. All amounts paid to the lender by Purchasers, or already paid to the lender by Purchasers, shall be credited or may be deducted respectively from the earnest money deposit.

Legacy initiated the process under this contract in an effort to exercise his option to purchase Centre Equities. Hosch alleges that Legacy did so maliciously with no intent to actually purchase the stock in an effort to injure Hosch by frustrating the sale to Rudnick and Carrigan.

3

Legacy=s written notice of his choice to exercise his option to purchase the stock came in the form of a letter from his lawyer, Tingley. Tingley=s letter to Hosch, dated June 13, 1997, states:

> RE:    Stock Purchase Agreement (Agreement) dated May 14th, 1997 between E. John Hosch (Seller) and James M. Rudnick and Donald T. Carrigan (Purchasers).
>
> Dear Mr. Hosch:
>
> I represent Don Legacy, in connection with the above-referenced matter.
>
> This letter will serve as my acknowledgement [sic] and your notification that Mr. Legacy has complied with paragraph 7.12 of the Agreement, in accordance with the provisions set out therein.

It is undisputed that Legacy did not deposit any money with Tingley. It is Tingley=s alleged role in facilitating Legacy=s interference with the Rudnick-Carrigan purchase of the corporation that forms the basis of this lawsuit by Hosch against Tingley.

Hosch=s pleadings in this Texas lawsuit allege causes of action for tortious interference with contract, negligent misrepresentation, fraudulent misrepresentation, fraudulent inducement, fraudulent concealment, conspiracy to defraud, as well as violations of the Texas Fraud in Real Estate and Stock Transactions Act and the Texas Securities Act. *See* Tex. Bus. & Comm. Code Ann. ' 27.01 (West 1987); Tex. Rev. Civ. Stat. Ann. art. 581-33B (West Supp. 2003). Hosch=s petition expressly seeks the following damages:

> 1.    Actual damages resulting from Defendant=s misrepresentation and from the loss of the Rudnick and Carrigan sale, including but not limited to lost profits;

**4**

2. Incidental and consequential damages, including but not limited to lost profits, lost equity, commissions paid, refinancing costs, interest expenses and related costs incurred in financing the Burger-Phillips Centre after the lost sale, additional taxes incurred after the lost sale, additional build-out costs incurred after the lost sale, additional operating expenses and costs incurred after the lost sale, attorney=s fees and litigation costs incurred as a result of Defendant=s misrepresentation, as well as all other additional costs and expenses incurred as a result of the lost sale; . . . .

In the Alabama lawsuit against Legacy, Hosch asserted a claim for intentional interference with a business relationship or contract under Alabama law. A jury in that case found in favor of Hosch on the liability portion of his claim. However, it awarded Hosch only one dollar as damages. It is this nominal damage award against Legacy in the Alabama lawsuit that Tingley contends precludes entirely Hosch=s claims against him in this lawsuit.

The record before us contains Hosch=s amended complaint in the Alabama litigation. That pleading contains the following factual allegations:

14. On May 14, 1997, Plaintiffs agreed to sell and James E. Rudnick (ARudnick@) and Donald T. Carrigan (ACarrigan@) agreed to purchase the majority of the stock of Centre Equities. The contract contained a clause which allowed Defendant Legacy to have the right of first refusal to purchase the majority of the stock of Centre Equities. . . .

15. Defendant Legacy stated that he would exercise the option in the contract to purchase the majority of the stock of Centre Equities.

16. Defendant Legacy did not close within the time allowed under the contract. Moreover, Defendant Legacy could not arrange for the financing of the purchase of Centre Equities within a reasonable time, nor did Legacy intend to purchase the corporate stock. Defendant Legacy=s intention was to maliciously interfere and prevent Plaintiffs from completing the sale of the corporate stock to the buyers.

**5**

17. The actions of Defendant Legacy prevented the sale of the corporate stock to Rudnick and Carrigan.

. . . .

20. Defendant Legacy did not have the means to purchase . . . the Centre Equities stock, and Defendant Legacy failed to make a good faith effort to arrange for the financing or purchase of . . . the corporate stock of Centre Equities. Defendant Legacy=s conduct constitutes a tortious interference with contracts between the buyer and seller.

21. The actions of Defendant Legacy caused the Plaintiffs to expend more time and resources to manage the property subsequently and also attempt to obtain other buyers. This increase in time and resources spent by Plaintiffs entitles the Plaintiffs to recover both compensatory and punitive damages for the malicious interference. Moreover, the actions of Defendant Legacy caused excessive costs, lost rent, a loss of profits, accrued interest on all loans related to Centre Equities and the other assets, and a loss of tax credits and capital.

The June 1998 final judgment in the Alabama lawsuit contains the following pertinent provisions:

This case was tried before this Court from May 4, 1998, to May 19, 1998, at which time a struck jury returned special verdicts on interrogatories submitted by the Court and verdicts as follows:

AWe, the jury, find for the Plaintiff, John Hosch, and against the Defendant, Donald Alan Legacy; and assess the Plaintiff, John Hosch=s damages for tortious interference:

Compensatory $ 1.00
Punitive $ -0-@
. . . .

Pursuant to the jury=s verdict, Judgment is hereby entered in favor of John Hosch and against Donald Alan Legacy for tortious interference in the amount of $1.00 compensatory.

. . . .

**6**

Following the trial of this matter and upon submission to the jury, the jury found that Centre Equities, Inc. and John Hosch were entitled to a rescission of the contract that gave Legacy the said fifteen (15%) percent ownership. The special verdict by the jury was as follows: Count 2 - Rescission, do you find that the Plaintiffs are entitled to rescission of the contract with Don Legacy Inc. due to any material breach of contract or any materially false and fraudulent statements made to Plaintiffs by Don Legacy regarding his intent to perform under contract with Plaintiff?

Answer: Yes

Pursuant to the jury=s special verdict the contract between Centre Equities Inc. and John Hosch, Plaintiffs and Donald Alan Legacy, Defendant is rescinded . . . .

Conversely, the judgment recites that the Alabama jury also found in Legacy=s favor on a Abreach of contract@ counterclaim against Hosch. The jury awarded Legacy compensatory damages of $125,000 against Hosch. There were numerous tort theories submitted to the jury by Legacy, including depreciating stock with intent to buy, oppression of minority stockholders, and conspiracy to divert corporate opportunity, all of which the jury rejected. Hosch was granted the equitable relief of rescission of the agreement transferring fifteen percent of the corporation=s stock to Legacy, as well as a declaration that Legacy had no interest in Centre Equities.

Tingley filed a motion for summary judgment in this lawsuit claiming the Alabama judgment was a complete bar to this action. The district court granted Tingley=s motion without specifying any grounds.

**DISCUSSION**

The question before the trial court, and before this Court on appeal, is whether the Alabama judgment rendered in Hosch=s case against Legacy precludes Hosch=s suit against Tingley. More precisely, the question is whether Tingley established as a matter of law that the Alabama judgment[2] precluded Hosch=s lawsuit against Tingley.

**Scope and Standard of Review**

---

[2] The Alabama judgment was before the district court as summary judgment evidence. Introduction of a facially valid foreign judgment creates a *prima facie* case for its recognition and enforcement under the full faith and credit clause. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex. 1975); *Cowan v. Moreno*, 903 S.W.2d 119, 123 (Tex. App.CAustin 1995, no writ).

The propriety of a summary judgment is an issue of law for the district court subject to de novo review. *Grocers Supply Co. v. Sharp*, 978 S.W.2d 632, 642 (Tex. App.CAustin 1998, pet. denied). Appellate courts apply the following standards when reviewing traditional summary judgments: (1) the movant has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in determining whether a material fact issue exists, evidence favorable to the non-movant is taken as true; and (3) every reasonable inference is indulged in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.CAustin 1999, no pet.). If a summary judgment does not specify the ground on which summary judgment was granted, an appellate court will affirm the judgment if any ground stated in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Questions concerning collateral estoppel are questions of law which this Court reviews *de novo. See Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 45 (Tex. App.CHouston [14th Dist.] 1999, pet. denied). Moreover, questions about which law to apply in a given situation are questions of law and are reviewed under a de novo standard. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).

## A.   FULL FAITH & CREDIT

Both parties assume that Texas law controls this case. However, we believe that the Full Faith and Credit Clause of the United States Constitution dictates that the preclusive effect of the Alabama judgment on this litigation is controlled by Alabama law. U.S. Const. art. IV, ' 1; *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998); *Matsushita Elec. Indust. Co. v. Epstein*, 516 U.S.

**9**

367, 373 (1996); *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986); *Marrese v. American Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982); *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Durfee v. Duke*, 375 U.S. 106, 109 (1963); *Mayhew v. Caprito*, 794 S.W.2d 1, 2 (Tex. 1990); *Villanueva v. Office of the Attorney Gen.*, 935 S.W.2d 953, 956 (Tex. App.CSan Antonio 1996, writ denied);**3** *Maxfield v. Terry*, 885 S.W.2d 216, 218 (Tex. App.CDallas 1994, writ denied) (citing *Durfee*, 375 U.S. at 110) (AThe United States Supreme Court interprets this provision [U.S. Const. art. IV, ' 1] to mean that a state must give another state=s judgment at least the res judicata effect it would receive in the state rendering the judgment.@); *see also* Restatement (Second) of Conflict of Laws ' 95 (1988); 18 Charles A. Wright et al., *Federal Practice and Procedure* ' 4467 (2002).

This point of constitutional law involves important issues of federalism. We believe that Alabama=s collateral estoppel law applies in this case. However, we will carefully examine the preclusion law of both Alabama and Texas because the trial court=s judgment must be reversed regardless of which state=s law is applied.

---

**3** In the family law context, Texas courts have long recognized that the Full Faith and Credit Clause impacts issues involving interjurisdictional preclusion. *See Elmer v. Elmer*, 567 S.W.2d 18, 20 (Tex. Civ. App.CEl Paso 1978, writ ref=d n.r.e.) (AThis is required in full faith and credit cases even though the rule being applied is contrary to the public policy of the situs state.@); *Frazier v. Frazier*, 394 S.W.2d 853, 855 (Tex. Civ. App.CWaco 1965, no writ); *Gibson v. Gibson*, 286 S.W.2d 216, 223 (Tex. Civ. App.CBeaumont 1955, no writ).

## B.  ALABAMA COLLATERAL ESTOPPEL LAW

Alabama recognizes the doctrine of collateral estoppel and applies it when a party seeks to relitigate an issue if: (1) that issue is identical to one litigated in a prior action; (2) that issue was actually litigated in the prior action; (3) the resolution of that issue was necessary to the prior judgment; and (4) the same parties are involved in the two actions.  *Biles v. Sullivan*, 793 So. 2d 708, 712 (Ala. 2000); *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 934 (Ala. 1995); *Benetton S.P.A. v. Benedot, Inc*., 642 So. 2d 394, 400 (Ala. 1994) (per curiam); *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990). If any one of these requirements is not met, preclusion will not be applied.  *In re Snow*, 508 So. 2d 266, 267 (Ala. 1987); *Fisher v. Space of Pensacola, Inc*., 461 So. 2d 790, 792 (Ala. 1984).

### Identity of Parties

This fourth requirement, identity of parties, is frequently labeled Amutuality of estoppel.@ It is this requirement of mutuality that primarily distinguishes Alabama collateral estoppel law from that of a majority of other jurisdictions.[4]  In order for a judgment to be given preclusive effect in a subsequent case under Alabama law, the same parties must be involved in the two lawsuits.  *Jackson*, 566 So. 2d at 726. Alabama recognizes privity as a minor exception to the identity of parties requirement.  The lack of identity

---

[4]  AMutuality of estoppel@ is a common law concept widely accepted up until the latter half of the twentieth century.  *See Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 130-31 (1912) (it was Aa principle of general elementary law that the estoppel of a judgment must be mutual@). It has been discarded by the federal courts, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979); *Blonder-Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 326 n.14, 350 (1971), and by many states.  *See, e.g.*, *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass=n.*, 122 P.2d 892, 895 (Cal. 1942) (ANo satisfactory rationalization has been advanced for the requirement of mutuality.  Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against

of parties requirement may be excused if either the party raising the collateral estoppel defense or the party against whom it is raised is in privity with a party to the prior action. *Id.*; *Constantine v. United States Fid. & Guar. Co.*, 545 So. 2d 750, 756 (Ala. 1989). The test for determining privity focuses on whether there is an identity of interests between the parties in the two actions. *Jackson*, 566 So. 2d at 726. Findings of fact or law in an action do not affect persons who were not parties to the action or not in privity with the parties. *Suggs v. Alabama Power Co.*, 123 So. 2d 4, 7 (Ala. 1960); *Sosebee v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 321 So. 2d 676, 678 (Ala. Ct. App. 1975).

The language in the Supreme Court of Alabama=s seminal opinion in *Constantine* is instructive:

> In its earlier consideration of a similar issue, this Court set out a thorough discussion of the defenses of *res judicata* and collateral estoppel (or estoppel by judgment). The Court held, in pertinent part:
>> ABroadly stated, the general rule is that to sustain a plea of . . . res adjudicata or estoppel by judgment, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be rendered on that point. [Citations omitted.] >A judgment, to conclude either party as to the subject-matter, must be such as to work a mutual estoppel; hence a plea of res judicata, to be good, must show the parties litigant in the two suits are the same . . . or else they must be in privity of estate or blood or in law with the parties in such former action. . . . That is, *a person who can claim the benefit of a judgment as an estoppel upon his adversary is one who would have been prejudiced by a contrary decision in the [previous] case*.=
>
> . . . .

---

a party who was bound by it is difficult to comprehend.@).

**12**

It is of course well settled also that a judgment is conclusive, not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them, defined by some of the authorities as Aa mutual or successive relationship to the same rights of property.@ [Citation omitted.]

*Constantine*, 545 So. 2d at 755 (quoting *Interstate Elec. Co. v. Fidelity & Deposit Co.*, 153 So. 427, 428-29 (Ala. 1934)).

This language directs that a party seeking to invoke the protective effect of preclusion against an adversary in a subsequent action must be A*one who would have been prejudiced by a contrary decision in the* [previous] *case*.@ Translated to the situation in our case, this Amutuality of estoppel@ rule means that Tingley cannot invoke the protection of the Alabama judgment against Hosch unless Tingley was either in privity with Legacy or was A*one who would have been prejudiced by a contrary decision*@ in the Alabama case.

Although Hosch was a party to the Alabama lawsuit, Tingley was not. There is nothing in this record to indicate that Tingley was even amenable to process in Alabama. We do not believe that Legacy and Tingley were in privity regarding the Rudnick-Carrigan agreement or Legacy=s attempt to purchase Centre Equities. Tingley allegedly acted only as Legacy=s attorney in the stock purchase matter. There is no indication that Tingley was ever in Alabama. He was a stranger to the Alabama suit. Had the Alabama lawsuit reached a contrary result, Tingley would not have been prejudiced. Consequently, there existed no identity of parties or Amutuality of estoppel@ as required by *Constantine*, *Interstate Electric*, and *Suggs*. *See Jackson*, 566 So. 2d at 726-27.

**13**

There is another exception under Alabama law to the requirement of identity of parties or Amutuality of estoppel,@ but it, too, is inapplicable here. Where the liability of a defendant is altogether dependent on the culpability of someone who was exonerated in a prior lawsuit, upon the same facts, when sued by the same plaintiff, then that new defendant is entitled to preclusion. *Smith v. Birmingham Transit Corp.*, 238 So. 2d 879, 881 (Ala. 1970); *Interstate Elec. Co.*, 153 So. at 429; *see also Portland Gold Mining Co. v. Stratton=s Independence, Ltd.*, 158 F. 63, 66-67 (8th Cir. 1907). This exception does not apply in the instant situation for two reasons. First, Legacy was not exonerated in the Alabama lawsuit; the jury found that Legacy had tortiously interfered with Hosch=s contract or business relations. Second, we do not believe that Legacy=s culpability in the Alabama suit is entirely determinative of Tingley=s alleged liability in this case. Legacy=s wrongdoing in connection with the option to purchase granted to him by the Rudnick-Carrigan agreement does not control the issue of whether an attorney is liable for knowingly misrepresenting a material fact to a third person. *See Suggs*, 123 So. 2d at 6-8. Therefore, this lawsuit does not meet the criteria for the application of collateral estoppel under the fourth prong of Alabama=s test for collateral estoppel.

## C.   TEXAS COLLATERAL ESTOPPEL LAW

In Texas, collateral estoppel prevents a party from relitigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Enter., Inc.*, 988 S.W.2d 212, 213 (Tex. 1999). To invoke the doctrine of collateral estoppel, a party must establish that: (1) the facts sought to be litigated in the second lawsuit were fully and fairly litigated in the first lawsuit; (2) those facts were essential to the judgment in the first lawsuit; and (3) the parties were cast as adversaries in the first lawsuit. *Eagle Props.,*

**14**

*Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *Mann v. Old Republic Nat=l Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.CHouston [14th Dist.] 1998, no pet.). A movant bringing a motion for summary judgment based on collateral estoppel bears the burden of conclusively proving these elements. *See Quanaim*, 17 S.W.3d at 36-37.

The issue decided in the first lawsuit must be identical to the issue sought to be precluded in the second. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 869 (Tex. App.CHouston [14th Dist.] 2000, no pet.). In determining whether the issues are identical, we must look at the essential elements of the claims. *Quanaim*, 17 S.W.3d at 36-37.

It has been held that in order to prove that an issue was previously litigated a party must present as evidence the pleadings and judgment in the first lawsuit. *Avila v. St. Luke=s Lutheran Hosp.*, 948 S.W.2d 841, 846 (Tex. App.CSan Antonio 1997, pet. denied). Tingley argues that he sufficiently satisfied this element because he presented as summary judgment evidence the pleadings and judgment in the Alabama case and cites *Avila* to support his argument. We do not read *Avila* as holding that the pleadings and judgment in the first lawsuit are the only evidence that need be presented in every case. They certainly are necessary in each case, but they may not be sufficient. We hold that what must be presented from the first lawsuit is so much of the record as will establish that the issue sought to be precluded is identical to that in the first suit and that it was fully and fairly litigated at that time. In some cases, the live pleadings and judgment may be sufficient. In other cases, such as this one, it may not be sufficient. *See,*

**15**

*e.g.*, *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App.CHouston [14th Dist.] 2000, orig. proceeding) (holding that portions of motions and orders introduced did not disclose basis for ruling, therefore did not show whether issue was identical and was fully and fairly litigated).[5]

**Texas Collateral Estoppel Law Applied**

---

[5] This decision was subsequently criticized by the supreme court, but on entirely other grounds. *In re Halliburton Co.*, 80 S.W.3d 566, 571 n.3 (Tex. 2002).

Tingley is not entitled to a summary judgment based on collateral estoppel under Texas law. First, Texas law requires that the party against whom collateral estoppel is asserted must not have prevailed in the first lawsuit. Here, Hosch did prevail in the Alabama lawsuit. Second, although Texas law does not require mutuality of parties,[6] it does require an identity of issues which is not present in these two lawsuits. Third, in response to the summary judgment motion, Hosch raised a fact issue about whether the material issues were fully and fairly tried in the Alabama lawsuit. Tingley failed to bring forth sufficient evidence to establish his entitlement to the collateral estoppel bar. Hosch brought forth sufficient summary judgment evidence to raise fact issues on the essential elements of Tingley=s collateral estoppel defense.

**Hosch Prevailed in the Alabama Lawsuit**

In *Quinney Electric, Inc. v. Kondos Entertainment, Inc*., the supreme court held that collateral estoppel does not prevent a party from relitigating an issue if that party was successful in the previous litigation. 988 S.W.2d at 213-14. There, an electrical contractor sued three defendants in state court to recover for services rendered, plus interest and attorney=s fees. One of the corporate defendants filed bankruptcy, and the bankruptcy court allowed payment of the debt as a general unsecured claim. The contractor then pursued the other two defendants in the state case. The trial court granted judgment to the contractor but credited the two defendants with the amount recovered in the bankruptcy proceeding. The court of appeals reversed, ruling that collateral estoppel prevented the contractor from relitigating its claim. The supreme court reinstated the trial court=s judgment, holding that collateral estoppel only prohibited

---

[6] *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

relitigation of claims that a party lost in the first action; it did not prevent relitigation of claims on which a party prevailed. *Id*. at 214.

## No Identity of Issues

Tingley argues that regardless of the differences in the liability theories in the two lawsuits, Hosch=s various causes of action all seek relief for the same injury, i.e. the loss of the sale of Centre Equities stock to Rudnick and Carrigan. Hosch, Tingley argues, should get but one bite at the damage-apple. He claims that the Alabama jury=s assessment of one dollar as damages to Hosch on his tortious interference claim against Legacy was an adjudication of the same damage issue involved in this case, the loss of the Rudnick-Carrigan bargain. He argues that collateral estoppel applies to bar the entire lawsuit against Tingley.

The damage component of a tortious interference claim is not the same under Alabama and Texas law. The basic measure of actual damages for tortious interference in Texas is the same as for breach of contract, i.e. to put the plaintiff in the same economic position as if the contract had been fully performed. *American Nat. Petroleum Co. v. Transcontinental Gas Pipe Line Corp*., 798 S.W.2d 274, 278 (Tex. 1990). However, while nominal damages are available in Texas in a breach of contract case,[7] nominal damages are not recoverable for a tortious interference claim. *See Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 891 (Tex. App.CDallas 2000, no pet.). Alabama, however, allows recovery of nominal

---

[7] When a plaintiff fails to prove actual damages resulting from a breach of contract, nominal damages are available upon proof of a contract and a breach thereof. *Fisher v. Westinghouse Credit Corp*., 760 S.W.2d 802, 808 (Tex. App.CDallas 1988, no writ).

damages on tortious interference claims. Nominal damages are considered to be compensatory or actual damages in Alabama. Moreover, upon proof of malice, the law in Alabama is that an award of nominal damages is a sufficient predicate for the imposition of punitive damages. *Pihakis v. Cottrell*, 243 So. 2d 685, 690-92 (Ala. 1971). When there are not sufficient facts by which to accurately measure the amount of the loss that has resulted, nominal damages may be awarded upon pleading and proof of a right of recovery. *Walker County v. Davis*, 128 So. 144, 148 (Ala. 1930). When the evidence allows recovery of nominal damages, but no more, Athe proper form of a [jury] charge in respect to such aspect is to limit the amount of the damages to a nominal sum.@ *Id*.

Hosch argues that there were several reasons why the Alabama jury could have awarded him only nominal damages, but that those considerations are not present here. The Alabama jury could have considered Legacy still capable of performing by purchasing the Burger-Phillips building, or that any damages were offset by salary or commissions owed by Hosch to Legacy. Both of these interpretations are reasonable based on the Alabama verdict, judgment, and jury arguments, which are part of this record. None of these considerations apply to Tingley in the Texas lawsuit.

The Alabama jury also could have considered the future damages that would result from the lost sale to be too speculative in June 1998 to quantify. Hosch points out that Legacy introduced evidence and argued to the jury that Hosch subsequently received an offer to buy the Burger-Phillips building at a much greater price than Rudnich and Carrigan were to pay. Hosch insisted during the Alabama case that the subsequent offer was not viable, which ultimately proved true.

Furthermore, Hosch argues in this case that he is not seeking recovery for the same damages involved in the Alabama lawsuit. Here, he has pleaded and presented summary judgment

**19**

evidence of lost-sale damages that have accrued since the Alabama trial in June 1998. Hosch=s damage expert witness, Quentin L. Mimms, testified that because of the loss of the Rudnick-Carrigan stock sale, the corporation (and Hosch as the sole shareholder) incurred additional losses since August 1, 1997, the date the sale was to have closed.[8] As summary judgment evidence, Hosch submitted Mimms=s expert report and damages calculations with attachments.[9]

Tingley argues that Mimms=s report shows that Hosch is seeking to recover damages accruing prior to the trial of the Alabama case. Therefore, Tingley argues, collateral estoppel prohibits the relitigation of Hosch=s pre-June 1998 damages. However, Hosch=s pleadings in this case expressly seek damages Aincurred after the lost sale.@ Hosch also submitted his own affidavit as summary judgment evidence. In it, he states that, in addition to the loss of the Rudnick-Carrigan sale, he sustained Aoperating expenses incurred on the Burger-Phillips building after the Alabama Lawsuit Judgment in the amount of at least $580,000. This figure includes items such as interest, refinancing costs, debt service, and attorney=s fees, incurred in 1999; . . . .@

---

[8] We do not know if Hosch had a damage expert witness in the Alabama case.

[9] AAttachment 1@ is a table summary of the consequential losses from August 1997 through September 2000; it reflects total losses of $414,396. AAttachment 2@ is a table indicating the AEquity Position@ of Centre Equities AAs of July 31, 1997@; it reflects that the ANet Proceeds Had Sale Closed August 1, 1997@ was $414,396.

The fact that the two lawsuits may have an element of damage in common is not sufficient under either Alabama or Texas law to foreclose the entire second lawsuit when the requirements of collateral estoppel are not otherwise met. Should Hosch actually be awarded damages for losses arising out of the lost sale incurred prior to June 1998, then those damages could be omitted from any recovery Hosch may be awarded in this litigation. *See Quinney Elec., Inc.*, 988 S.W.2d at 214.[10]

**Issues Not Fully and Fairly Determined in Alabama**

---

[10] The one satisfaction rule prohibits a claimant from recovering twice for the same injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390-91 (Tex. 2000).

Tingley also failed to satisfy another requirement for application of collateral estoppel, that the damage issue was fully and fairly litigated. Both Alabama and Texas law require such a showing. Hosch argues that collateral estoppel is inapplicable because his tortious interference claim was not fully and fairly tried in the Alabama action. He points to the fact that in the Alabama suit, Tingley refused to cooperate in discovery. Legacy=s defense to the fact that he had not deposited any money with Tingley was to argue that he and Tingley had an agreement that Tingley would provide the $56,000 from the proceeds of a loan that he (Tingley) had applied for with an entity called ACFO.@ Hosch produced Tingley=s deposition in the Alabama case in which Tingley refused to testify about his alleged loan application to CFO. Tingley also flatly refused to produce any documentation of the CFO loan application, other than an obscure copy of a one-page sheet confirming a wire transfer of $56,250 from Tingley to CFO. Hosch complains that Tingley was beyond the subpoena power of the Alabama court so that this testimony and any relevant documents could not be compelled. He argues that these limitations prevented a full and fair trial of his claim. Because we do not have a complete evidentiary record from the Alabama action, we cannot assess the degree to which the deprivation of this evidence impeded Hosch=s prosecution of his claim. Without question, Legacy relied on Tingley=s CFO loan application as evidence of the truth of Tingley=s statement in the June 13 letter representing that Legacy had complied with the earnest money requirement of the stock purchase agreement. In his deposition in the Alabama case, Tingley testified that he had already paid $56,250 in connection with the CFO loan application when he wrote the June 13 letter. However, he also testified that no portion of the proposed CFO loan proceeds was Aearmarked@ or intended for Legacy or the Centre Equities purchase.[11] Tingley refused to be cross-examined about his

---

[11] Nevertheless, Tingley submitted an affidavit in this (Texas) case to support his motion for

22

CFO loan application. Clearly, the circumstances surrounding Tingley=s CFO loan application were relevant to Hosch=s tortious interference claim.[12]

We cannot determine whether the tortious interference damage issue was fully and fairly litigated in Alabama. The lack of the CFO loan application evidence likely had a significant impact on the Alabama jury=s assessment of damages. It was Tingley=s burden to produce the evidentiary record in the Alabama lawsuit to conclusively show that this deprivation of evidence was inconsequential in the Alabama trial. This Tingley failed to do. We hold that Hosch raised a genuine fact question about whether the claim for tortious interference with the Rudnick-Carrigan sale was fully and fairly litigated in the Alabama lawsuit.

## CONCLUSION

Tingley did not establish his entitlement to summary judgment based on the doctrine of collateral estoppel as a matter of either Alabama or Texas law. The district court erred in granting summary judgment. Accordingly, the judgment of the district court is reversed and remanded for further proceedings.

David Puryear, Justice

---

summary judgment stating:

> While my loan application with CFO was pending, Mr. Legacy approached me about using part of the financing to be obtained from CFO to purchase stock in Centre Equities . . . . I agreed with Mr. Legacy that, if the financing was obtained, proceeds of the financing would be used to exercise the right of first refusal and purchase of Centre Equities.

[12] We note that documentation surrounding Tingley=s CFO loan application was produced through discovery in the Texas case. Apparently, Tingley was not successful in obtaining the loan from CFO.

Before Justices Kidd, Patterson and Puryear

Reversed and Remanded

Filed:   March 6, 2003