REVISED MARCH 11, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2009

Charles R. Fulbruge III
Clerk

No. 07-70004

ANTHONY CARDELL HAYNES

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

DENNIS, Circuit Judge:

Petitioner Anthony Cardell Haynes ("Haynes"), a Texas prisoner, appeals the district court's decision to deny Haynes a petition for a writ of habeas corpus that alleges the state prosecutor's use of peremptory challenges was in violation of the Equal Protection Clause of the United States Constitution as prescribed by Batson v. Kentucky, 476 U.S. 79 (1986).

The State of Texas charged Haynes with the capital murder of a peace officer who was "acting in the lawful discharge of an official duty[.]" TEX. PENAL CODE § 19.03(a)(1). A jury convicted Haynes of capital murder and answered

Texas's special issues in a manner requiring the imposition of a death sentence. After exhausting his state remedies without relief, Haynes filed a federal habeas petition on October 5, 2005, with the United States District Court for the Southern District of Texas. The District Court denied habeas relief in an opinion filed on January 25, 2007.  Haynes filed for a certificate of appealability (COA) in this court on May 30, 2007.  This panel granted a COA on two issues: "(1) whether the prosecution violated his rights under the Sixth and Fourteenth Amendments through the racially discriminatory use of its peremptory challenge as to potential juror Owens; and (2) whether the prosecution violated his rights under the Sixth and Fourteenth Amendments through the racially discriminatory use of its peremptory challenge as to potential juror McQueen." Haynes v. Quarterman, 526 F.3d 189, 202-203 (5th Cir. 2008).

In respect to the use of peremptory challenges against prospective jurors McQueen and Owens in the Batson context, the relevant facts are as follows: Two different state trial judges took turns presiding over the jury selection process in this case at the state court level. Judge Wallace presided at the beginning of the jury selection process when the jurors were addressed and questioned as a group;  Judge Harper presided during the next stage in which the attorneys questioned the prospective jurors individually; and Judge Wallace presided again during the final stage in which peremptory challenges were exercised and when Batson challenges were made, considered, and ruled upon. During the Batson hearing, the defendant established a prima facie case of a Batson violation, and the prosecutor justified his use of peremptory challenges against potential jurors McQueen and Owens solely[1] on his impression of their demeanor when responding to individual voir dire questioning (at which time Judge Wallace was not presiding).

---

[1] The State agrees on appeal that the prosecutor relied solely on demeanor evidence in making these challenges.

In his direct appeal, Haynes appealed the Batson determinations to the state appellate court. On appeal, Haynes noted that "Judge Wallace, having not observed the voir dire of individual veniremembers, having not observed their demeanor, body language, responses, attitudes, and characteristics, could not assess or scrutinize the veracity of the prosecutor's explanations and observations regarding the reasons for striking these prospective veniremembers." Haynes also contended that "[a] trial court's determination of a Batson challenge must necessarily be based upon the facial validity of the prosecutor's explanation in light of the trial court's direct evaluation of the venire, their respective statements, responses and demeanor." (emphasis in original). In this context, Haynes argued that "the trial court erred in concluding that the State exercised its peremptory challenges against minority veniremembers Goodman, Kirkling, McQuuen [sic], and Owens, respectively in a racially neutral manner where these findings are unsupported by the record." He repeats these arguments in his federal habeas petition. His arguments with respect to McQueen and Owens are now properly before this court.

## STANDARD OF REVIEW

"As this case comes to us under 28 U.S.C. § 2254, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), which provides that habeas relief may not be granted unless the state court proceeding resulted in 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.' A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law; rather, the decision must be objectively unreasonable." Virgil v. Dretke, 446 F.3d 598, 604 (5th Cir. 2006).

## ANALYSIS

A. Haynes Did Not Waive His Batson Challenge and It Is Not Procedurally Defaulted

The State first contends that Haynes' claim of a Batson violation because Judge Wallace did not preside over individual voir dire is procedurally defaulted. We disagree. "A state prisoner must present his claims to the state court and exhaust state remedies before seeking federal habeas relief. . . . The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court, either through direct appeal or state habeas proceedings." Goodrum v. Quarterman, 547 F.3d 249, 256 (5th Cir. 2008) (internal quotation marks and citation omitted). The state appellate court recognized that Haynes made two related arguments with respect to the fact that Judge Wallace, and not Judge Harper, made the Batson determinations; it found only one of them to be procedurally defaulted.

The state appellate court first examined Haynes's argument that the trial judge erred and denied him due process by presiding over the Batson hearing even though he had not presided over the voir dire examination. With respect to this due process challenge, the state court, on direct appeal, concluded that Haynes procedurally defaulted the argument by failing to raise it before the trial court. The appellate court then proceeded to discuss a related but different argument regarding the effect of Judge Wallace's failure to sit on individual voir dire on the state appellate court's review of the trial court's Batson determinations. It did not find this argument to be procedurally defaulted and, in fact, considered this argument extensively on the merits. The state appellate court eventually concluded that Haynes was "partly correct" and decided to give the trial court "no deference" as to its Batson determinations. Haynes v. State, No. 73,685, slip op. at 17 (Tex. App. Ct. Oct. 10, 2001) (unpublished). Haynes also preserves this later issue in his federal habeas petition. The federal district court addressed this issue on the merits. See Haynes v. Quarterman, 2007 WL 268374, at *16 n.10 (S.D. Tex. Jan. 25, 2007) (unpublished). We can now squarely address this issue.

## B. A Batson Violation Occurred And Habeas Relief is Required

A Batson challenge involves three steps:

The Supreme Court has outlined a three-step process for determining whether peremptory strikes have been applied in a discriminatory manner. First, the claimant must make a prima facie showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination.

United States v. Bentley-Smith, 2 F.3d 1368, 1373 (5th Cir. 1993). "The Constitution forbids striking even a single prospective juror for a discriminatory purpose." Snyder v. Louisiana, 128 S.Ct. 1203, 1208 (2008) (internal quotation marks and alteration omitted); Reed v. Quarterman, --- F.3d ---, 2009 WL 58903, at *16 n.12 (5th Cir. Jan. 12, 2009).

We first consider Haynes's Batson claims as to prospective juror Owens. With respect to prospective juror Owens, the State concedes that the defendant made a prima facie showing that the peremptory challenge had been exercised on the basis of race.

For the second step, the prosecutors articulated a race-neutral explanation as to Owens based entirely on demeanor. The Supreme Court demands that the trial court especially scrutinize explanations based purely on demeanor. See Snyder, 128 S.Ct. at 1208; see also Davis v. Fisk Elec. Co., 268 S.W.3d 508, 518 (Tex. 2008); Goodwin v. State, 898 S.W.2d 380, 382 (Tex. Ct. App.-San Antonio 1995); Daniels v. State, 768 S.W.2d 314, 317-18 (Tex. Ct. App.-Tyler 1988). This demand is logically derived from the underlying rationale for delegating the Batson determination to a trial court and according it substantial deference – namely, that the trial court is better able to make determinations of demeanor. See Snyder, 128 S.Ct. at 1208 ("We have recognized that these determinations

of credibility and demeanor lie peculiarly within a trial judge's province.") (internal quotations and citations omitted); Miller-El v. Cockrell, 537 U.S. 322, 339 (2003); see also Thompson v. Keohane, 516 U.S. 99, 111 (1995). Therefore, we accord the trial court the primary role in adjudicating demeanor- based Batson challenges because the trial court is in a better position to evaluate those challenges and is not relying, as the appellate court does, solely on the paper record. See Moody v. Quarterman, 476 F.3d 260, 272 (5th Cir. 2007) (noting that, according to the Supreme Court, the state court's credibility and demeanor determinations based solely on the paper record are not accorded a presumption of correctness, i.e., AEDPA deference) (citing Cabana v. Bullock, 474 U.S. 376, 388 n.5 (1986), overruled in part on other grounds, Pope v. Illinois, 481 U.S. 497 (1987)); see also Mann v. Scott, 41 F.3d 968, 982 (5th Cir. 1994).

For demeanor-based challenges especially, appellate review is necessarily dependent on the trial court's inquiry into the prosecutor's reasons and his personal observations of the juror's demeanor that is the basis for those reasons. See Snyder, 128 S.Ct. at 1208; United States v. Lance, 853 F.2d 1177, 1181 (5th Cir. 1988); Bentley-Smith, 2 F.3d at 1375; United States v. Cobb, 975 F.2d 152, 155-56 (5th Cir. 1992). Such an inquiry is derivative of the trial court's clearly established obligation to "undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" Batson, 476 U.S. at 93 (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266 (1977) (citation omitted and emphasis added)); id. at 95 ("[T]he trial court must undertake a 'factual inquiry' that 'takes into account all possible explanatory factors' in the particular case." (emphasis added)); Miller-El v. Dretke, 545 U.S. 231, 251-52 (2005) ("Miller-El II") ("As for law, the rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." (emphasis added)). For example, in Jones v. Butler, we

read Batson to require the application of the trial court's observations of individual jurors if relevant to the prosecutor's explanation:

> The trial judge then evaluates, 'consider[ing] all relevant circumstances,' whether the prosecutor's explanation is race-neutral or a pretext for excluding potential jurors based on race. In making this determination the trial judge has available not only the prosecutor's explanation, but also the judge's observations of the demeanor of the prosecutor and the veniremen. As the Supreme Court noted in Batson, the finding of intentional discrimination in use of peremptory challenges is a finding of fact that 'largely will turn on evaluation of credibility.' Years after trial, the prosecutor cannot adequately reconstruct his reasons for striking a venireman. Nor can the judge recall whether he believed a potential juror's statement that any alleged biases would not prevent him from being a fair and impartial juror.

864 F.2d 348, 369-70 (5th Cir. 1988) (emphasis added); see also Wilkerson v. Collins, 950 F.2d 1054, 1063 (5th Cir. 1992) (quoting Mayo v. Lynaugh, 893 F.2d 683, 689 (5th Cir.), modified, 920 F.2d 251 (5th Cir. 1990)). Texas courts have also read Batson in this way:

> Batson requires the trial judge to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and nonverbal communication from each member of the venire. . . . The trial judge is present during voir dire and is best able to observe the demeanor and tenor of voice of the venireperson. . . . Accordingly, although a prosecutor gives a race-neutral explanation, the trial judge, based upon all the evidence and his observations and experience, may determine whether or not the explanation is artificial or pretextual.

Smith v. State, 814 S.W.2d 858, 861-62 (Tex. Ct. App.-Amarillo 1991); accord Ingram v. State, 978 S.W.2d 627, 630 (Tex. Ct. App.-Amarillo 1998); Gaines v. State, 811 S.W.2d 245, 250 (Tex. Ct. App.-Dallas 1991). Taking these principles together, trial courts are accorded the primary role in adjudicating Batson challenges because they can apply the relevant circumstances, which include their presumed observations of the juror and the entire venire as part of their role to oversee the trial. See, e.g., Rice v. Collins, 546 U.S. 333, 336 (2006);

Miller-El II, 545 U.S. at 240; United States v. Armstrong, 517 U.S. 456, 467-68 (1996). In this case, the trial court and the state appellate court did not conduct a "factual inquiry" or a "sensitive" inquiry into the demeanor-based reasons because neither court applied the relevant observations of the juror's demeanor despite the trial court's role and experience overseeing the individual voir dire. The state appellate court in this case found that both the trial judge and the appellate court made their Batson determinations from the same appellate fact-finding position, i.e., from the cold paper record, and therefore the state court concedes there was no trial fact-finding. The state appellate court concluded:

> Because the trial judge did not witness the actual voir dire at issue, his position as fact-finder with regard to the demeanor of the veniremembers at issue is no better than that of this Court. Thus, we owe him no deference. . . . But regardless of whether the trial judge referred to the record, any concern arising from this situation is moot, because we have not given deference and have ourselves reviewed the voir dire record.

Haynes, No. 73,685, slip op. at 17–18 (emphasis added) (citing Garcia v. State, 15 S.W.3d 533, 535-36 (Tex. Ct. Crim. App. 2000)). Taking this conclusion to its logical end, we cannot correspondingly apply AEDPA deference to the state court, because the state courts engaged in pure appellate fact-finding for an issue that turns entirely on demeanor. See Moody, 476 F.3d at 272. It is clearly established that the cold record cannot accurately reveal the demeanor of live trial participants. See, e.g., Witt, 469 U.S. at 428; Patton v. Yount, 467 U.S. 1025, 1038 & n.14 (1984); Ciccarello v. Graham, 296 F.2d 858, 860 (5th Cir. 1961) ("Analysis of the cold record can never equal a first-hand observation of the witness' demeanor on the stand[.]"). Therefore, no court, including ours, can now engage in a proper adjudication of the defendant's demeanor-based Batson challenge as to prospective juror Owens because we will be relying solely on a paper record and would thereby contravene Batson and its clearly-established

"factual inquiry" requirement.[2]  See, e.g., Snyder, 128 S.Ct. at 1207; Batson, 476 U.S. at 95.

For these reasons, we now order the district court to grant conditional habeas relief.  We REVERSE the district court's judgment denying habeas relief and REMAND this case to that court with instructions to order the State of Texas to either give Anthony Cardell Haynes a new trial or release him from custody within 180 days of the date of the district court's order on remand.

---

[2] Because we find a Batson violation as to prospective juror Owens, we need not analyze the alleged violation as to prospective juror McQueen. See Snyder, 128 S.Ct. at 1208.