**Affirmed and Opinion Filed October 4, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00660-CV**

**WESLEY & WESLEY, INC., D/B/A INTEGRATED FOUNDATION SOLUTIONS, Appellant**
**V.**
**STEPHEN KLARER, AS INDEPENDENT EXECUTOR FOR ESTATE OF ROBERT L. KLARER, DECEASED, Appellee**

**On Appeal from the Probate Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. PR-18-00368-3**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Partida-Kipness

Appellant Wesley & Wesley, Inc. d/b/a Integrated Foundation Solutions (IFS)

appeals an adverse judgment following a bench trial. Because legally sufficient

evidence supported the judgment, we affirm.

# BACKGROUND

In 2015, appellee Stephen Klarer and his siblings decided to repair and remodel their deceased father's home[1] before putting it on the market. Because there were cracks in several areas of the house, Klarer hired Crannell, Crannell & Martin Corporation (CCM), which is a civil engineering firm, to inspect and evaluate the foundation. CCM provided Klarer with an Initial Engineering Evaluation and Structural Inspection (the CCM Report) on April 24, 2015. The CCM Report noted the drainage on the North side (front) of the property was inadequate because it did not drain properly. In the report, CCM recommended the homeowner "[a]dd gutters and area drain basins or repair sump pump" to repair the external drainage issues. The last page of the CCM Report included a sketch showing CCM's recommendations. The sketch shows suggested locations for the installation of sixteen piers around portions of the foundation and notes the recommendation for the property owner to "install gutters or add drainage basins or repair sump pump" in seven locations in the front yard of the home. The seven



---

[1] Klarer's father passed away on April 15, 2015. Klarer was named Independent Executor of the estate in his father's will.

locations are marked with an "X" inside of a box; four are on the top right of the sketch and three are on the bottom right. CCM also determined the sump pump needed to be repaired because it was either not functioning or not functioning properly. After receiving the CCM Report, Klarer contacted various foundation repair companies, including IFS, to discuss doing the job. IFS was contracted to install a drainage system on the three locations on the bottom right of the sketch. That work is the subject of the underlying proceeding and this appeal.

When Klarer met with Schaun Wesley from IFS at the property to discuss the project and a potential bid from IFS, he gave Wesley a copy of the CCM Report so Wesley would understand what work needed to be done. At the end of their meeting, Wesley told Klarer that IFS also installs drainage systems and asked if Klarer would like Wesley to include drainage in the estimate. Klarer said yes but told Wesley to "make it a separate item on the estimate."

Klarer hired IFS to repair the foundation and install sub-surface drainage in the three lower right locations recommended by CCM. To address the inadequate drainage on the upper right of the sketch, Klarer chose to replace the sump pump rather than add or repair the existing area drain basins because of the sump pump's construction and exit point. Specifically, the sump pump exited through a rigid PVC pipe that "went from those front basins along the side of the house up at the top of the drawing, and it went back past the house," and pumped out to the alley. Klarer testified he chose to replace the sump pump himself because he believed it was an

easier fix for the upper drainage issues when compared to repairing the existing drain basins or installing new ones. He also wanted to avoid installing gutters because he thought the house "would look better without gutters." His understanding of CCM's recommendation was that repairing the sump pump would make gutter installation unnecessary.

The parties' May 15, 2015 Agreement (the Agreement) included a "work description" of the tasks IFS would complete. Those tasks included the following:

- "Install (16) Pressed Concrete Repair Piers in locations indicated on their site map," and

- "IFS can install a solid sub-surface drain along the front of the home as shown - discharging to the street[.]"

The Agreement further stated, "ALL WORK PER CRANNELL ENGINEERING REPORT DATED 04/22/2015." The Agreement listed $5,200.00 as the cost for installing the piers and final plumbing and $2,480.00 for "Optional IFS to install front drain[.]"

IFS performed the foundation repair and drainage installation over a three-day period. Klarer contends the sub-surface drainage installed was deficient, unworkmanlike, and not in compliance with the Agreement because it did not discharge to the street. Instead, the water discharged eight to ten feet from the street into the property's front lawn and toward a neighbor's property. Klarer paid IFS in full for the foundation repairs but refused to pay for the drainage work. In the months following the repairs, Klarer and IFS exchanged correspondence regarding Klarer's

concerns and IFS's requests for payment but did not resolve the matter. On July 28, 2015, IFS recorded a mechanic's lien against the property. Klarer then sued IFS for breach of contract, breach of the implied warranty of good workmanship, and violations of the Texas Deceptive Trade Practices Act (DTPA). Klarer sought economic damages, treble damages, and attorney's fees and asked for the mechanic's lien to be stricken and dissolved. IFS filed counterclaims for breach of contract, quantum meruit, fees, and damages for violations of section 308.056 of the Texas Estates Code.

After a bench trial, the trial court entered judgment for Klarer for actual damages and attorney's fees. IFS timely-requested findings of fact and conclusions of law. The trial court, however, did not issue findings or conclusions. This appeal followed.

**STANDARD OF REVIEW**

When, the trial court fails to file findings in response to a proper and timely request, the court of appeals must presume the trial court made all the findings necessary to support the judgment. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive, are binding only if supported by the evidence, and may be challenged for both legal and factual sufficiency. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.); *Quintanilla v.*

*ANG Rental Holdings Series, LLC-Series Redeemer*, No. 05-20-00062-CV, 2021 WL 3625075, at *2–3 (Tex. App.—Dallas Aug. 16, 2021, no pet.) (mem. op.) (citing *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017)); *Barlow v. Richardson*, No. 05-21-00844-CV, 2023 WL 195419, at *1 (Tex. App.—Dallas Jan. 17, 2023, no pet.) (mem. op.) ("A trial court's presumed findings may be challenged for legal and factual sufficiency under the same standards that apply to a jury's verdict."). In the absence of findings of fact and conclusions of law, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam); *Sink v. Sink*, 364 S.W.3d 340, 344–345 (Tex. App.—Dallas 2012, no pet.) ("If the implied findings are supported by the evidence, we must uphold the judgment on any theory of law applicable to the case.").

In reviewing a trial court's findings of fact, we apply the same legal sufficiency standard used when determining if sufficient evidence exists to support an answer to a jury question. *Sheetz*, 503 S.W.3d at 502. When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to

–6–

differ in their conclusions.' " (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

We review de novo a trial court's conclusions of law. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.* "The availability of attorney's fees under a particular statute is a question of law for the court." *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 641 (Tex. App.-–Dallas 2016, no pet.) (citing *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)). We therefore review the issue of whether Klarer was entitled to an award of attorney's fees under chapter 38 of the civil practice and remedies code de novo. *Id.* (citing *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999)).

## ANALYSIS

On appeal, IFS contends the evidence was legally insufficient to support the trial court's implied findings that IFS breached the contract and violated the DTPA. IFS also asserts the evidence was legally insufficient to support the implied finding that Klarer suffered damages caused by IFS's conduct. IFS further argues the trial court erred by awarding Klarer attorney's fees. Finally, IFS maintains judgment should be rendered in its favor on IFS's breach of contract claim.

### I.      Sufficiency of the Evidence

In its first issue, IFS contends there is no evidence IFS breached the Agreement and no evidence of damages caused by the drainage system installed by IFS.

### A.      Klarer's breach of contract claim

The elements of a cause of action for breach of a contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach. *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). A contract has been breached when a party fails to perform an act that it has expressly or impliedly promised to perform. *Id.* IFS challenges only the third element, arguing only that "Klarer failed to prove the third essential element of a breach of contract case: a breach by IFS of an express or implied promise." Klarer

maintains IFS materially breached the Agreement because the drainage system installed by IFS did not discharge to the street. We agree with Klarer.

The Agreement states, "IFS can install a solid sub-surface drain along the front of the home as shown - discharging to the street[.]" When Klarer signed the Agreement, he was agreeing to the terms listed, including that the drainage would discharge to the street. It is undisputed the system installed by IFS did not discharge to the street. Klarer testified the drainage system did not extend to the street and discharged ten feet short of the street in the property's front lawn. Wesley testified the system ended at and discharged through two, pop-up emitters placed ten feet from the street. Wesley contended the emitters were placed properly to allow the water to discharge at the pop-up emitters and then gravity would move the water to the street. In contrast, Klarer's drainage expert, Danny Richter, testified the pop-up emitters were installed "too far from the curb and did not take the water to the street." Richter inspected the drainage system installed by IFS and determined the system was improperly installed because "[t]here were numerous portions within it that made it insufficient for - - for the conditions that were there." Richter testified the water was discharging "in the middle of the yard, and it was going next to the neighboring property." He explained it is not proper to install a drainage system that discharges into the yard and into neighboring property. It was Richter' opinion IFS's installation of the drainage system was not performed in a good and workmanlike manner. His proposal to fix the issue was to install a correct drainage system to

discharge to the street, which would cost $2,460.42. Richter also found other insufficiencies with the IFS system. For example, Richter concluded IFS should have used PVC piping rather than corrugated piping because corrugated piping "is an inferior product." He also determined "[t]he catch basins were not installed at the correct level to allow the water to fall in correctly."

We conclude this testimony constitutes more than a scintilla of evidence that IFS breached the express terms of the Agreement. *See Sheetz*, 503 S.W.3d at 502; *see also King Ranch, Inc.*, 118 S.W.3d at 751. We overrule IFS's first issue concerning evidence of breach.

### B. Klarer's damages

IFS also challenges the sufficiency of the evidence to support the award of damages to Klarer. To recover damages for breach of contract, a plaintiff must prove the defendant's breach caused the damages. *See*, *e.g.*, *Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex. App.—San Antonio 1998, pet. denied). The evidence must show the damages were the natural, probable, and foreseeable consequence of the defendant's conduct. *MetroMarke Multifamily Dev. Fund I, L.P. v. RRAC Dev. GP, LLC*, No. 05-18-00900-CV, 2019 WL 6522181, at *3 (Tex. App.—Dallas Dec. 4, 2019, no pet.) (mem. op.) (citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)). The measure of damages for breach of contract is intended to put the complainant in the same economic position had the contract been performed. *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 (Tex.

App.—Austin 2003, no pet.) (citing *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990)). Stated differently, the general measure of damages in a breach of contract case is "just compensation for the loss or damage actually sustained." *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 621 (Tex. App.—Dallas 2010, no pet.) (quoting *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 316 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

Klarer sought and was awarded actual damages of $1,070.00, which was the amount Klarer paid to have gutters installed. IFS contends Klarer presented no evidence the installation of the gutters was causally linked to the alleged breach of the Agreement or to any of Klarer's complaints about the drainage system. We disagree.

Klarer testified CCM recommended he install gutters on the front of the house to remedy the drainage problems caused by IFS's installation of the drainage system. According to Klarer, he did not want to install gutters when the work was originally performed because he did not like the aesthetic of gutters. He testified the CCM Report recommended he either install gutters, repair the sump pump or install a drainage system. Instead of installing gutters, he chose to repair the sump pump to correct the inadequate drainage on the upper basins and hire IFS to install drain basins in the lower part of the yard. But after IFS installed the drainage system in what Klarer deemed to be a defective manner, Klarer contacted Jeff Crannell at CCM

–11–

for advice on how to remedy the defects. Klarer testified he asked Crannell "if it would be a good alternative to install gutters on the front of the property" to remedy the defective drainage installed by IFS. Klarer installed the gutters to remedy IFS's defective work because Crannell said gutters were a good alternative to remedy the damage. We conclude Klarer's testimony constitutes more than a scintilla of evidence to support an implied finding that the cost for installing gutters was a direct damage suffered by Klarer as a result of IFS's breach of the Agreement. We overrule IFS's first issue challenging the damages awarded to Klarer.

## II.     Attorney's Fees

In its second issue, IFS argues Klarer was not entitled to recover attorney's fees because he suffered no compensable economic injury and had no statutory basis to recovery his fees. We disagree.

"A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). To recover fees under section 38.001, "a party must prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 548 (Tex. App.—Dallas 2005, no pet.) ("section 38.001 requires recovery of damages for a claimant to be eligible to recover attorney's fees.").

As discussed above, Klarer prevailed on his breach of contract claim and proved and recovered economic damages caused by IFS's breach. Klarer was, therefore, entitled to attorney's fees under section 38.001. TEX. CIV. PRAC. & REM. CODE § 38.001(8); *see James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 418 (Tex. 2022) (prevailing party who was awarded damages on a breach-of-contract claim was entitled to recover its reasonable attorney's fees under section 38.001) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004)). IFS does not challenge the amount of fees awarded by the trial court. We, therefore, do not address the sufficiency of the evidence to support the fee award. We overrule IFS's second issue and affirm the award of attorney's fees to Klarer.

## III.    Remaining appellate issues

In its third and fourth issues, IFS challenges the sufficiency of the evidence to support an implied finding for Klarer on the DTPA claims and seeks rendition of judgment in favor of IFS on its claims for breach of contract and attorney's fees.

We have affirmed the judgment for Klarer on his breach of contract claim. Because our resolution of IFS's first two issues provide a basis for the trial court's judgment independent of IFS's remaining issues, we need not reach the remaining issues. TEX. R. APP. P. 47.1; *see Malouf v. Sterquell PSF Settlement, L.C.*, No. 05-17-01343-CV, 2019 WL 5799988, at *6 (Tex. App.—Dallas Nov. 7, 2019, pet. denied) (mem. op.) (concluding court did not need to reach remaining issues where

–13–

resolution of first issue provided a basis for affirming the trial court's judgment independent of appellant's remaining issues) (first citing *Wyde v. Francesconi*, 566 S.W.3d 890, 895 (Tex. App.—Dallas 2018, no pet.), and then citing *Anderton v. Green*, 555 S.W.3d 361, 371 (Tex. App.—Dallas 2018, no pet.)); *see also Grindinger v. Kixmiller*, No. 02-06-00221-CV, 2007 WL 529954, at *5 (Tex. App.—Fort Worth Feb. 22, 2007, pet. denied) (mem. op.) (no need to address challenge to findings on alternative theory of recovery under the DTPA when judgment affirmed on contract claim).

## CONCLUSION

The evidence was legally sufficient to support the trial court's implied findings on Klarer's claims for breach of contract and attorney's fees. Accordingly, we overrule IFS's first and second issues, do not reach IFS's remaining issues, and affirm the judgment.

/Robbie Partida-Kipness
ROBBIE PARTIDA-KIPNESS
JUSTICE

220660F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

WESLEY & WESLEY, INC., D/B/A
INTEGRATED FOUNDATION
SOLUTIONS, Appellant

No. 05-22-00660-CV        V.

STEPHEN KLARER, AS
INDEPENDENT EXECUTOR FOR
ESTATE OF ROBERT L. KLARER,
DECEASED, Appellee

On Appeal from the Probate Court
No. 3, Dallas County, Texas
Trial Court Cause No. PR-18-00368-3.
Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee STEPHEN KLARER, AS INDEPENDENT EXECUTOR FOR ESTATE OF ROBERT L. KLARER, DECEASED recover his costs of this appeal from appellant WESLEY & WESLEY, INC., D/B/A INTEGRATED FOUNDATION SOLUTIONS.

Judgment entered this 4th day of October 2023.

–15–